UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE, DIVISION

United States District Court
Southern District of Texas
FILED

JUL 1 9 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| ELEUTERIO MATA CORTEZ AND RAMONA ESCONTRIAS AS REPRESENTATIVE OF THE ESTATE OF JUAN VALENTIN MATA ESCONTRIAS; | § § § § § § | |
| MARIA DE LA LUZ NUNEZ NIETO AS NEXT FRIEND OF YADIRA MARIA MATA NUNEZ, CRISTINA MATA NUNEZ, AND VALENTIN MATA NUNEZ  Plaintiffs, | § § § § § § § | CIVIL ACTION NO: 04-CV-50 |
| VS. | § § | |
| FORD MOTOR COMPANY  Defendants. | § § § | |

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS**

---

Come now Plaintiffs, ELEUTERIO MATA CORTEZ AND RAMONA ESCONTRIAS AS REPRESENTATIVE OF THE ESTATEOF JUAN VALENTIN MATA ESCONTRIAS; MARIA DE LA LUZ NUNEZ NIETO AS NEXT FRIEND OF YADIRA, MARIA MATA NUNEZ, CRISTINA, MATA NUNEZ, AND VALENTIN, MATA NUNEZ, and make and file this their Response to Defendants' Motion to Dismiss for Forum Non Conveniens and would show the Court as follows:

Page 1

## I. INTRODUCTION

An unreasonably dangerous design defect in the stability and handling of a 1986 Ford Bronco II killed Juan Valentin Mata Escontrias. On January 27, 2001, the vehicle suddenly and unexpectantly suffered a loss of control resulting in a rollover crash and striking a light post. The collision jarred loose electric cables, the vehicle burst into flames and Juan Valentin Mata Escontrias burned to death.

Jurisdiction is proper in this Court. At its heart, this case is based on strict liability. The Plaintiffs will be called upon at trial to prove: (1) that the 1986 Ford Bronco II is defective; (2) that the Ford Bronco II reached the decedent without substantial change in its condition from the time it was originally sold; (3) that the defect rendered the Ford Bronco II unreasonably dangerous; and (4) that the defect caused injury to the user.

In the case at bar, the Defendant's principal place of business is in the United States. The Defendant is authorized to conduct business in Texas and derives substantial economic profits from this state. The critical evidence needed to prosecute this claim against the Defendant is not situated in Mexico. Volumes of documentary evidence, written in English, and the testimony of Ford corporate representatives, design engineers, testing engineers, and experts, are situated in the United States. This evidence will recount the design development of the Ford Bronco II in the United States. This evidence will reveal the testing of the Ford Bronco II prototype at Ford's testing site in the United States. This evidence will show that the Bronco II had major stability problems and often tipped up off the ground during handling tests. This evidence will show that, according to federal crash statistics, the Bronco II was one of the three most deadly SUVs then on the road and was rated the most deadly by the Insurance Institute for Highway Safety. In sum, the sheer volume of evidence that is situated in the United States will

reveal how this fatal design flaw came into existence, how it was unreasonably dangerous and how it caused the death of Juan Valentin Mata Escontrias.

## II. Argument and Authorities

**A.    *Prima facie*, it is not vexatious or oppressive, within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States.**

The doctrine of *forum non conveniens* furnishes criteria for a choice between two or more forums in which the defendant is amenable to process. At least two such forums must be available to the plaintiff before the doctrine comes into play; and *they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law. Veba - Chemie A. G. v. M/V* Getafix, 711 F.2d 1248 n.7 (5th Cir. 1983) (citing *Trivoli Realty v. Interstate Circuit*, 167 F.2d 155 (5th Cir.) (emphasis added).

The doctrine of *forum non conveniens* proceeds from the premise that in *rare* circumstances, one court can relinquish its jurisdiction in favor of another court. *Quakenbush v. Allstate*, 517 U.S. 706 (1996) (emphasis added). Under this doctrine, the central focus of a *forum non conveniens* analysis is where the trial will be convenient to both parties and to serve the interest of justice. *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). The Defendant has the burden of demonstrating *forum non conveniens*. *Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 501, 521-22 (1947).

In the case at bar, it is uncontested that the Defendant is domiciled in the United States with its principal place of business located in Dearborn, Michigan and that it is authorized to conduct business in the state of Texas. It is a fair and reasonable inference that, ordinarily, one's domicile is not an inconvenient place for one to be sued. *Prima facie* therefore, it is not vexatious or oppressive,

within the doctrine under consideration, for Plaintiffs to sue an American corporation in the United States.

**B.　Plaintiffs' choice of forum should be upheld because an adequate alternative forum does not exist under Mexican law.**

" The doctrine of forum non conveniens furnishes a criteria for a choice between two or more forums in which the defendant is amenable to process. At least two such forums must be available to the plaintiff before the doctrine comes into play; and *they shall not be dependent merely upon the will or grace of the defendant, but must be provided by law.*" *Veba - Chemie A. G. v. M/V Getafix*, 711 F.2d 1246 (5th Cir. 1983) (emphasis added). Defendant claims that its unilateral submission to Mexican jurisdiction is sufficient to render that forum available for purposes of *forum non conveniens*. Def. Mot. at 4.

As the Supreme Court noted in *Piper Aircraft*, the availability of an alternative forum is *ordinarily* established when the defendant is "amenable to process" in the other jurisdiction. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 254 n.22 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. at 506-07) (emphasis added). *Piper Aircraft* does not however stand for the proposition that the unilateral submission of a defendant to the other jurisdiction will establish the availability of an alternative forum in every case. Nevertheless, this is exactly the claim being pushed forward by the Defendant herein. Def. Mot. at 4. Were the Court to accept the Defendant's argument, it would create a rule such that the availability of an alternate forum would depend solely upon the will or grace of the defendant.

Defendant additionally refers the Court to the case of *Gonzalez v. Chrysler* for the proposition that the facts, as they pertain to design defect, are too attenuated to support maintaining jurisdiction here. *Gonzalez v. Chrysler*, 301 F.3d 377 (5th Cir. 2002). The case at bar is distinguishable from *Gonzalez* in that the product in *Gonzalez*, a Chrysler air bag, does not

share the same multi-year and multi-national history of failure and causing death and injury. More specifically, the action at issue here is a fatal design defect, in existence since the advent of the Bronco II in 1983, that results in vehicles tipping off the ground, rolling over and killing, maiming, or seriously injuring drivers and passengers. The facts as they pertain to the design defect in this case are not attenuated by any degree to the actions at issue rather; they are the very heart and soul of the actions presented.

C.  **Private and Public Factors Weigh in Favor of Maintaining Plaintiff's Choice of Forum.**

   1.  *Plaintiff's Entitled to Strong Deference with Regard to Their Choice of Forum.*

Plaintiffs herein maintain that they are entitled to a presumption of convenience equal to that of resident or citizen plaintiffs on the basis of treaty obligations existing between the United States and Mexico. The United States has a treaty and Mexico signed an International Covenant of Civil and Political Rights that explicitly gives the citizens of both countries equal access to their nations' respective courts. International Covenant of Civil and Political Rights, Art.14(1) (December 16, 1996); *Blanco v. Banco Ind. de Venezuela S.A.*, 997 F.2d 147, 153 n. 6 (2nd Cir. 1980) (en banc); *Ford Motor Co. v. Aguinaga*, 9 S.W.3d 252, 261 (Tex. App.-San Antonio 1999, pet. denied). Article 14(1) of the treaty states, *inter alia*: "All persons shall be equal before the courts and tribunals. In the determination of... rights and obligations in a suit at law, everyone shall be entitled to a fair and public hearing by a competent, independent, and impartial tribunal."

This argument parallels the argument made by plaintiffs in *In re Bridgestone/Firestone Tires Products Liability Litig.* wherein the multi-litigation district court denied defendant's motion to dismiss on grounds forum non conveniens because a Treaty of Peace, Friendship, Navigation and Commerce between the United States and Venezuela gives "expatriate U.S. nationals and treaty nationals residing in their home countries...the same preference of their

choice of forum, with the consideration that suing in a United States forum while residing in a forum country is less likely to be convenient." *In re Bridgestone/Firestone Tires Products Liability Litig.*, 190 F.Supp. 2d 1125, 1136 (S.D. Ind. 2002). The multi-district court concluded that such treaties put foreign nationals on the same basis as United States citizens residing abroad as to the deference to their choice of forum. *Id.* Therefore, the balance of public and private factors must do more than merely point towards proceedings in a foreign country. *In re Bridgestone/Firestone Tires Products Liability Litig.*, 190 F.Supp. 2d at 1137.

Plaintiffs' argument that treaty between the United States and Mexico entitles them to a presumption of convenience was made by other plaintiffs to a three-panel court in the case of Vasquez v. Bridgestone/Firestone, Inc., however, the *Vasquez* court did not decide that issue and thus it remains for this Court to do so. *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672 (5th Cir. 2003). In passing on deciding the issue, the *Vasquez* court indicated it had difficulty seeing how *In re Bridgestone/Firestone* was relevant in that "some of the vehicles and tires, unlike the situation in this case, were manufactured in the United States." *In re Bridgestone/Firestone,* 325 F.3d at 673 n8.

In the case at bar, the car was manufactured in the United States and is currently located in McAllen, Texas. The multi-district court's reasoning with regard to the effect of treaty obligations on deference given to Plaintiffs' choice of forum herein is both relevant and persuasive given the facts of this specific case. Plaintiffs herein should thus be accorded a strong presumption of convenience and the Defendants should be held to their burden of showing that the private and public factors <u>clearly points</u> towards an adequate alternative forum.

D.  **The balance of private factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas**

   1.  *Volume of Crucial and Relevant Evidence Favors U.S. Forum.*

In considering the relative importance and availability of various types of evidence and keeping in mind that liability will be the most crucial issue in this case, retaining jurisdiction in this forum is favored. It is uncontested that most of the documents and witnesses related to the design and testing of the vehicles and tires are in the United States. It is also uncontested that information on accident rates for this vehicle is also available only in the United States. It is also uncontested that all of the personnel involved in the design, testing, engineering and executive decisions and investigating vehicle failures are employed and situated in the United States. As such, the overwhelming bulk of the evidence regarding the central issue of liability in the case at bar is more easily accessible in the United States.

   2.  *Translation Expenses Favor Retaining U.S. Jurisdiction.*

It can reasonably be expected, as noted by the multi-district court in *In re Bridgstone/Firestone*, that there will be an onerous burden of translating into Spanish the volumes of document and expert witness testimony concerning design history, comment, etc. *In re Bridgstone/Firestone,* 190 F.Supp. 2d at 1142-43. In that case, it was noted by the court that the burden of translating even "several hundred" such documents would be no small task. *Id.* Indeed, Defendant has produced millions of documents concerning liability into the document depositories for the multi-district litigation. Such practical and financial hardship can only support Plaintiff's choice of forum.

While documents regarding the accident and Plaintiff's death come from Mexico, the investigative reports have been translated and exchanged with Defendants at Plaintiff's expense. Further, to the extent that the subject vehicle's service records exist and are not already in the

Defendants' possession, Plaintiff will translate and provide same to the Defendants at Plaintiff's expense. Further, the vehicle that is the subject of the instant lawsuit is situated in Texas and is subject to examination by Defendants' expert at their convenience.

3. *Where a view of premises is unlikely, this private factor merits little consideration in a forum non conveniens analysis.*

Defendant presupposes that viewing the accident site is a foregone and a paramount necessity and as such, if this case were tried in Texas, there would be no practical means of transporting the jury to Mexico. As a practical matter, it is unlikely that any federal court would expend its judicial resources and time to investigate the scene of any accident. It remains the burden of the parties, in the prosecution and defense of a case, to examine and present such information in such a manner so as to assist the jury in addressing disputed issues. Certainly, the parties' experts in the instant case can, as they have in other similar litigation, visit, examine, videotape, and visually reconstruct the highway scene where the defective vehicle tipped off the asphalted ground and rolled over so as to sufficiently aid the jury.

4. *Plaintiff's Choice of Forum Does Not Oppress or Vexate the Defendants.*

Finally, this Court should consider that Texas is a forum with which Defendants' attorneys are thoroughly familiar and who are operating under legal, procedural, and evidentiary rules that are likewise familiar to its counsel and it cannot credibly be claimed to work oppression and vexation to the Defendant such as to far outweigh the Plaintiffs' convenience.

E. **The balance of public factors as enunciated by the Supreme Court in *Gulf Oil v. Gilbert*, favor Plaintiffs' choice of forum in Texas.**

1. *The U.S. interest in the resolution of this case favors maintaining jurisdiction.*

The public factors that need to be taken into consideration by this Court, assuming *arguendo* that Plaintiffs have an alternative forum for this litigation, deal with the burden this

case will place on the federal court system and the citizens of Texas who may be called upon to serve as jurors. The central question is whether the case has a general nexus with the forum sufficient to justify the forum's commitment of judicial time and resources to it. There is little question that all the public factors will weigh against dismissal under the *forum non conveniens* doctrine.

The Defendant in this case has extracted large sums of money annually from the sale of its defectively designed vehicle to Mexican citizens. The sale of these fatally flawed vehicles brought enormous extra profits to the Defendant, which then went to the benefit of shareholders in the United States and the federal government as taxes, and to the salaries of U.S. employees.

U.S. residents are free to go abroad and bring enormous profits home to the United States by selling products designed and tested in the U.S. This ability must be, at a minimum, balanced by the willingness of the United States to allow injured foreigners to seek redress in its courts against such local citizens when their profits came back to the United States especially when those profits were in great part generated by intentional, negligent, reckless and criminal acts of such citizen in the U.S.

Allowing multinational corporations to bring profits back to the U.S. at the expense of foreign life can, as one commentator noted, be viewed as compromising the integrity of the United States' reputation for democracy, the condemnation of human rights, and the protection of certain inalienable rights. Jacqueline Duval-Major, *One-Way Ticket Home: The Federal Doctrine of Forum Non Conveniens and the International Plaintiff*, 77 CORNELL L. REV. 650, 675 (1992) (recognizing that, if United States has interest in protecting inalienable rights, then it has powerful interest in guaranteeing that multinational corporations are responsible for any violations). The public interests viewed in this light favors holding trial in Texas.

Clearly, the U.S. has a regulatory interest in the designing, manufacturing, distributing, and selling of products in the United States and sending those products to other countries. The Court in *Piper* recognized that the United States has an interest in deterring harmful conduct abroad. *Piper Aircraft Co. v. Reyno*, 454 U.S. at 260-61 (1981). Most immediate is the U.S. interest in preventing similar accidents from occurring in the United States which mirrors Texas interest in preventing similar accidents in Texas. The plaintiffs in *Union Carbide* noted that Union Carbide operated a plant in West Virginia of a similar design to the one in India, which killed more than 3500 people and injured 200,000 others. *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in Dec., 1984*, 634 F. Supp. 842, 858 (S.D.N.Y. 1986), *modified*, 809 F.2d 195 (2d Cir.), *cert. denied*, 484 U.S. 871 (1987).

Similarly, the Defendant's vehicle, of similar design to the vehicle that killed Juan Valentin Mata, has been sold to and caused the deaths and maiming of U.S. and Texas citizens. Furthermore, as one commentator has noted, the United States has an interest in preventing the appearance that the United States is involved in such harmful conduct. Jacqueline Duval-Major, at 675 (1992). Dismissal on *forum non conveniens* grounds may appear to contradict these ideals and interests. Duval-Major, at 675 (noting that U.S. government, to safeguard its reputation as supportive of human rights, has interest in integrity of its businesses).

Further, *the pursuit of justice is not a burden.* As a practical matter, and aside from Defendant's floodgate rhetoric, the case at bar involves the claims of a handful of individuals against a single large multinational corporation, will require no more of the Court's time and resources than would any other civil case, and would not be an unfair to burden Texas citizens with jury duty for a trial. Our citizenry recognizes that a wrong does not fade quietly into the night simply because its immediate consequences are felt and endured far away. Further, the subject

matter presented by the Plaintiffs' claims is one familiar to Texans. Dozens of Texas citizens have been injured or killed by the Ford Explorer and the Defendant has been held accountable in Texas courts for those injuries and deaths. The refusal of the Defendant in this case, to confront a Texas judge and jury, is not really about convenience or fairness. It is a transparent connivance to avoid accountability.

### 2. *Texas Choice of Law Favors Retaining Jurisdiction.*

In further consideration of public factors, Texas choice of law follows the Restatement (Second) of Conflicts of Law, Sections 6 and 145. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex. 1979). The Restatement, Section 6, requires the Court consider:

1. the needs of the interstate and international systems
2. the relevant policies of the forum
3. the relevant policies of the interested states and the relevant interests of those states in the determination of the particular issue
4. the protection of justified expectations
5. the basic policies underlying the particular field of law,
6. certainty, predictability and a uniformity of result, and
7. the ease of determination of application of the law to be applied.

*Id.* at 318. the Restatement, section 6, provides that, with respect to tort claims, the law of the state with the most significant relationship to the occurrence and the parties should control. *Id.* at 319. The contacts to be considered are:

1. The place where the injury occurred,
2. The place where the conduct causing the injury occurred,
3. The domicile, residence, nationality, etc. of the parties, and

  4. The places where the relationship, if any, between the parties is centered. *Id.* at 319. This does not turn on the number of the contacts but on their qualitative nature. *Id.*

  The Court should additionally consider that a U.S. forum has a greater interest than Mexico in holding U.S. citizens accountable for conduct they committed in the U.S. *Compare McLennan,* 245 F.3d at 425-26 (Texas law applied to helicopter crash in Canada injuring Canadian plaintiff because the design, marketing, and manufacturing of helicopter took place in Texas). In contrast, Mexico has little interest in limiting recovery of its citizens against U.S. corporations for conduct, i.e., the design, testing, and manufacture of the Bronco II, committed in the U.S. *See Danner v. Staggs,* 680 F2d 427, 431 (5th Cir. 1982); *Aguinaga,* 9 S.W.3d at 260.

  Lastly, it is uncontested that Mexico has no strict products liability law, which is the principal substantive claim asserted against Defendant. Clearly, it is for this reason as well as the limitation on recoverable damages that fuels the Defendant's desire to have Mexican law apply. The true outcome of a F.N.C. Dismissal would be to allow these Defendant to never be held accountable for their wrongful conduct. Such is the true imperialism here.

  The refusal of American corporations, such as the Defendant, to confront a Texas judge and jury is not really about "inconvenience" but rather it is but a connivance to avoid corporate accountability. It is not an unreasonable burden on Texas residents to be called to jury duty on this case. Our citizenry recognizes that a wrong does not fade quietly into the night simply because its immediate consequences are felt and endured far away. This is especially true where these very same defective products have maimed and killed people in our own state of Texas. The Defendants' position has nothing to do with fairness and convenience, the very precepts of the doctrine of forum non-coveniens, but rather has everything to do with immunizing multinational corporations such as

themselves from accountability for their wrongdoing merely because the effects of their defective products are felt abroad.

For the foregoing reasons, Defendants efforts should fail. Dismissal based on forum non-conveniens should be denied.

## IV.   CONCLUSION

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs respectfully request that this Honorable Court deny Defendants' Motion to Dismiss for Forum Non Conveniens.

Same should be ruled as such for all of the above reasons including that the treaty between United States and Mexico requires that the Mexican Plaintiffs be afforded the same standing as an American Plaintiffs by treaty and for the further reason that Plaintiffs have failed to carried their burden of proof in establishing that an adequate forum is available and/or that the private and public factors strongly point to the alternative forum, Defendant's Motion for Dismissal for Forum Non Conveniens should be denied.

In the alternative, if Defendant's Forum Non Conveniens Motion is granted, the court should include a return of jurisdiction clause to an order including:

- that defendants agree to submit to the foreign jurisdiction and process in foreign courts;
- that the defendant waive limitations defenses;
- that the defendant agree to submit to discovery in the foreign forum;
- that the defendant agree that discovery in the U.s. suit may be used in the foreign suit;
- that the defendant agree to make his witness and evidence available in the foreign jurisdiction;
- that the defendant agree that the foreign judgment may be enforced against it in the United States.

- That if the defendant obstructs suit in the alternative or a court in Mexico does not accept the case, plaintiff may return to the America forum.

        Respectfully submitted,

        **LAW OFFICE OF MARK A CANTU**
        THE ATRIUM
        1300 N. 10th St., Suite 400
        McAllen, Texas 78501
        Tel: 956/687-8181
        Fax: 956/687-8868

By: _/s/ Juan A. Gonzalez_
     Juan A. Gonzalez
     State Bar No. 08129310
     Federal ID 3472


By: _/s/ Ricardo G. Benavides_
     Ricardo G. Benavides
     Texas State Bar No. 24031735
     Federal ID 32205

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

    I do hereby certify that a true and correct copy of the foregoing instrument has been forwarded to the following counsel of record via telefax, certified mail return receipt requested, regular mail and/or hand delivery on this the 19th day of July, 2004.

Evan N. Kramer
Daniell Harsany Shields
Brown McCarroll, L.L.P.
111 Congress Avenue, Ste. 1400
Austin, Texas 78701
**Attorneys for Ford Motor Company**

JUAN A. GONZALEZ
RICARDO G. BENAVIDES